IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL L. HODGE, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:18-CV-3040-X-BH |
| § | |
| THE BANK OF NEW YORK MELLON § | |
| FKA THE BANK OF NEW YORK, AS § | |
| TRUSTEE (CWABS 2006-SD2) and § | |
| BAYVIEW LOAN SERVICING, LLC, § | |
| Defendants. § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings, evidence, and applicable law, *Defendants' Motion for Summary Judgment*, filed July 31, 2019 (doc. 14), should be **GRANTED**, and all of the plaintiff's claims should be **DISMISSED with prejudice.**

**I. BACKGROUND**

This case involves the attempted foreclosure of real property located at 1014 Wind Ridge Drive, Duncanville, Texas 75137 (the Property). (doc. 1-4 at 4.)[2] On September 5, 2001, Michael L. Hodge (Plaintiff) individually executed a note (Note) in favor of America's Wholesale Lender (Lender) for a loan in the principal amount of $223,920.00. (doc. 15 at 10-11.) Plaintiff and Sandra Hodge (collectively Borrowers) contemporaneously executed a deed of trust (Deed of Trust) that granted a security interest in the Property to Lender to secure repayment of the Note. (*Id.* at 248-61.) The Deed of Trust named Mortgage Electronic Registration Systems, Inc. (MERS), as the

---

[1]By *Special Order No. 3-251*, this foreclosure case was automatically referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

nominee for Lender and its successors and assigns and as the beneficiary of the Deed of Trust. (*Id.* at 248.)

As Lender's nominee, MERS had the right to exercise any and all of the interests Borrower granted Lender, including foreclosing and selling the Property upon default, and releasing and canceling the Deed of Trust. (*Id.* at 250.) Under the terms of the Deed of Trust, Borrowers would be in default if they failed to timely pay the full amount of each required monthly payment and subject to acceleration of the loan and foreclosure proceedings on the Property. (*Id.* at 250, 257.)

On May 18, 2006, Plaintiff received a loan modification (First Loan Modification) that cured an outstanding arrearage under his loan.[3] (*Id.* at 267-70.) On August 4, 2008, he filed for bankruptcy protection.[4] (*Id.* at 307.) He received a second loan modification under the Home Affordable Modification Program (HAMP) and executed a Home Affordable Modification Agreement (Second Loan Modification) on April 1, 2011. (*Id.* at 273-80.) The new principal balance of the Note was $363,870.81; the new interest rate and monthly payment amounts were initially decreased for the first five years, but would gradually increase thereafter. (*Id.* at 275.)

On August 17, 2012, MERS, as nominee for Lender, executed an assignment of deed of trust (Assignment) assigning the Deed of Trust to The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2006-SD2 (BONY), which was recorded with the Dallas County Clerk. (*Id.* at 263-65.) On or about December 15, 2012, Bayview Loan Servicing, LLC (Servicer) became the

---

[3]Plaintiff executed a Loan Modification Agreement stating that as of May 1, 2006, the unpaid principal balance of the loan was $253,048.35. (doc. 15 at 267.)

[4]*See In re Michael Hodge*, Cause No. 08-43502-rfn13 (Bankr. N.D. Tex. Aug. 4, 2008).

servicer of Plaintiff's loan.  (*Id.* at 6.)[5]

On November 14, 2013, the bankruptcy trustee filed a final report and account in Plaintiff's bankruptcy case, which listed the mortgage arrearage claim allowed on his loan as $72,971.15, and the principal amount paid as $5,654.77. (*Id.* at 326.)  The bankruptcy case was closed on December 20, 2013. (*Id.* at 321.)

The property taxes for 2013 were not paid on time due to a shortage in the escrow account associated with the Property.  (*See* docs. 1-4 at 5; 15 at 245.)  In May 2014, Servicer advanced $5,916.21 to cure this delinquency and paid the 2013 property taxes. (doc. 15 at 245.)  When this advance was combined with the projections for future property taxes, there was a total escrow shortage of $12,456.49.  (*Id.*)  Servicer spread this shortage amount over a 36-month period, which increased Plaintiff's monthly payments, beginning July 1, 2014, by $1,154.03.  (*Id.*)  On or about April 7, 2015, Plaintiff notified Servicer that the 2013 property tax delinquency was caused by its error with the escrow account.  (*Id.*)  In a letter to Plaintiff dated May 7, 2015, Servicer admitted it had failed to include the property taxes with Plaintiff's monthly payments, which resulted in the 2013 property tax delinquency.  (*Id.* at 245-46.)  The letter stated that the penalties and interest fees associated with this error had been waived, and that Servicer was "in the process of spreading the escrow shortage over a 60 month period, rather than the initial 36 month period, in order to reduce [his] overall monthly payment."  (*Id.*)

On January 20, 2016, Plaintiff moved to reopen the bankruptcy case for entry of discharge under 11 U.S.C. § 1328(a), claiming he had made all payments required under his confirmed plan. (doc. 15 at 330-31.)  On February 1, 2016, the trustee objected to the motion because there were

---

[5] Bank of America, N.A. was the previous servicer of Plaintiff's loan. (doc. 15 at 6.)

allegations that "unpaid post-petition mortgage payments" remained due despite Plaintiff's claim that he had made all required payments under the plan. (*Id.* at 333.) On February 23, 2016, Plaintiff filed a notice of withdrawal of his debtor's certification and motion for entry of discharge, admitting that he was "behind on his post-petition direct payments to his mortgage creditor." (*Id.* at 336.) The December 1, 2014 monthly payment remained due. (*Id.* at 6.)

On November 2, 2018, Plaintiff filed this lawsuit in the 192nd Judicial District of Dallas County, Texas. (*See* doc. 1-4.)[6] His verified state court petition alleges that his confirmed bankruptcy plan "allowed him the legal right to pay his past due arrears of approximately $20,786." (*Id.* at 4.) It claims he made all of his payments on time, but "was never given credit for all of the payments he made in bankruptcy." (*Id.* at 4-5.) Plaintiff allegedly received a loan modification in 2011[7] that required monthly payments of $790.00, but after Servicer took over, "the $790.00 monthly payment randomly increased to $900.00, thereafter randomly increasing to various amounts up to $2,500.00, then retreating to $1,870.00." (*Id.* at 4.) He allegedly continued to make these payments notwithstanding these payment fluctuations. (*Id.*)

The petition also alleges that Plaintiff requested an itemized accounting from Servicer when he "discovered his monthly payments were being misapplied because his principle [sic] balance was not decreasing." (*Id.* at 5.) Even though agents of Servicer allegedly confirmed there were mistakes with Plaintiff's payments, Servicer "ha[d] not fulfilled [his] accounting request and ha[d] not

---

[6]Plaintiff previously sued BONY and Servicer (Defendants) in the 68th Judicial District of Dallas County, Texas on March 31, 2016. *See Michael Hodge v. The Bank of New York Mellon, et al.*, Cause No. DC-16-03703. After Defendants filed a motion for summary judgment, Plaintiff filed a nonsuit without prejudice, and the case was voluntarily dismissed on December 2, 2016.

[7]The petition alleges the loan modification was in 2009, (doc. 1-4 at 4), but Plaintiff's affidavit in response to the motion for summary judgment states this was in 2011, (doc. 26-1 at 3).

4

corrected its accounting errors." (*Id.*)  Servicer allegedly admitted that it erroneously failed to put funds in escrow for his property taxes, but it never "corrected its accounting mistakes," which forced Plaintiff "to directly pay property insurance and two years of property taxes." (*Id.*)  Servicer's "failure to correct its admitted mistakes became financially insurmountable, forcing [him] to fall behind on his loan payments." (*Id.*)

The petition also alleges that Plaintiff submitted a loss mitigation application on or about August 1, 2015, but "[Servicer] ha[d] not provided any written denial or approval as to Defendant's [sic] loan modification application." (*Id.*)  It contends that Plaintiff had not received "all of his periodic statements concerning his mortgage account information," "an accurate accounting after having demanded so in writing,"or "a response to his recent requests notifying him whether [his loan modification applications were] approved, denied, or subject to further conditions." (*Id.* at 6.) Plaintiff asserts claims for promissory estoppel and violations of the Real Estate Settlement Procedures Act (RESPA) and Truth in Lending Act (TILA), and he seeks actual, reliance, exemplary, and statutory damages, court costs, attorney's fees, and injunctive relief preventing foreclosure of the Property. (*Id.* at 13-15.)  On November 5, 2018, the state court issued a Temporary Restraining Order (TRO) enjoining the sale of the Property, and the foreclosure sale was canceled. (doc. 1-9.)

On November 15, 2018, Defendants removed this action on the basis of federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* doc. 1.)  On May 28, 2019, Defendants moved for summary judgment. (docs. 14-16.)  Plaintiff responded on July 31, 2019 (docs. 25-27), and Defendants replied on August 14, 2019 (docs. 31-32).

5

## II.  DEFENDANTS' EVIDENTIARY OBJECTIONS

In their reply to their motion for summary judgment, Defendants object to and move to strike an exhibit and Plaintiff's affidavit offered in support of his response to the motion for summary judgment. (doc. 31 at 16-18.)  Because the exhibit and affidavit, even if considered, do not affect the disposition of the pending motion for summary judgment, Defendants' objections are **OVERRULED as moot**. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n. 6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).

## III.  MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Plaintiff's claims for promissory estoppel, violations of RESPA and TILA, and on his requests for injunctive relief and attorney's fees.  (*See* doc. 14.)[8]

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an

---

[8] They also argue that Plaintiff's accounting claim fails, but the petition does not assert an independent cause of action for an accounting. (doc. 16 at 26-27.)

affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[9] Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc);

---

[9]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

7

*Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**A.     Loan Modifications - 12 C.F.R. § 1024.41**

Defendants move for summary judgment on Plaintiff's claim that it violated § 1024.41 on the basis that Plaintiff had already received a loan modification. (doc. 16 at 14-15.) They further argue that the summary judgment evidence demonstrates that Servicer provided a response to Plaintiff's third request for a loan modification. (*Id.*)

RESPA protects borrowers, in part, by prohibiting predatory practices in the lending and servicing of federally-related mortgage loans. *See* 12 U.S.C. §§ 2601(a), 2605-2608; *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011). Title 12 C.F.R. § 1024.41, known as Regulation X, is a RESPA-implementing regulation that sets out the procedures and timeframe for reviewing loss mitigation applications, including the servicer's obligation to provide the borrower written notice, within thirty days of receipt of a complete loss mitigation application, of the loss mitigation options it will offer the borrower, or of the specific reasons for denying the application. *See, e.g.*, 12 C.F.R. § 1024.41(c), (d); *see also Obazee v. The Bank of N.Y. Mellon*, No. 3:15-CV-1082-D, 2015 WL 4602971, at *3-4 (N.D. Tex. July 31, 2015). "A servicer is only required to comply with the requirements of [Regulation X] for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i). Regulation X therefore "only appl[ies] to a borrower's first loss mitigation application." *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 318 n.4

8

(5th Cir. Oct. 2, 2015); *see, e.g., Allen v. Wells Fargo Bank Nat'l Ass'n*, No. 3:16-CV-0249-D, 2017 WL 3421067, at *4 (N.D. Tex. Aug. 9, 2017) ("[T]he court agrees with [the bank's] position and holds that, under § 1024.41(i), [a] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account.") (internal citations omitted); *Bobbitt v. Wells Fargo Bank, N.A.*, No. H-14-387, 2015 WL 12777378, at *3 (S.D. Tex. May 7, 2015) ("The plain text of 12 C.F.R. § 1024.41 does not require compliance with 12 C.F.R. § 1024.41 for multiple loss mitigation applications.").

Here, Defendants proffer summary judgment evidence showing that Plaintiff previously obtained a loan modification, and that he had received responses to his requests for a third loan modification. They point to the First Loan Modification Plaintiff received in May 2006, and the Second Loan Modification he received in April 2011. (*See* doc. 15 at 267-76.) They also point to seven non-approval notices Servicer sent Plaintiff between September 2015 and July 2018, in response to his requests for a third loan modification. (*Id.* at 13-84.)

Because Defendants have met their summary judgment burden on this claim, the burden now shifts to Plaintiff to identify a genuine issue of material fact regarding whether Defendants had violated § 1024.41. He admits that he previously obtained a loan modification in 2011, and he does not dispute the fact that he received the non-approval notices in response to the loss mitigation application he submitted in August 2015. (doc. 26-1 at 3.) He instead alleges for the first time that he had submitted other loan modification requests between August 2013 and October 2014, and that Defendants never responded to those applications. (doc. 27 at 16-19.) Because these allegations were not raised in the petition, Plaintiff cannot raise them for the first time in his summary judgment response. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A

9

claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Even if these allegations were considered, however, his claim still fails as a matter of law because the requirements of § 1024.41 only applies to his first loss mitigation application in 2006. *See* 12 C.F.R. § 1024.41(i); *see, e.g., Germain v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-1694-M (BT), 2018 WL 1517860, at *4 (N.D. Tex. Mar. 28, 2018), *aff'd sub nom. by Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269 (5th Cir. 2019) (granting summary judgment on RESPA claim based on second loss mitigation application because RESPA's requirements apply to only one completed loss mitigation application). Plaintiff has failed to meet his burden to identify a genuine issue of material fact as to his claim for violation of § 1024.41, and Defendants' motion for summary judgment as to this claim should be granted.[10]

**B.   Notice of Error - 12 C.F.R. § 1024.35**

Defendants move for summary judgment on Plaintiff's § 1024.35 claim on the basis that there is no evidence that he sent a qualified written request that complied with the requirements of 12 C.F.R. § 1024.35. (doc. 16 at 15-19.)

Section 1024.35 outlines the error resolution procedures for when a borrower notifies the loan servicer about certain errors[11] involving the mortgage loan. *See* 12 C.F.R. § 1024.35; *Ghanem*

---

[10] Defendants also move for summary judgment on this claim on the ground that Plaintiff has no evidence of actual damages. (doc. 16 at 18.) Because the claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

[11] The categories of errors covered under § 1024.35 include:

> (1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
>
> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

10

*v. Nationstar Mortg., LLC*, No. CIV.A. H-14-3091, 2015 WL 1932046, at *4 (S.D. Tex. Apr. 28, 2015) ("Section 1024.35 of the Code of Federal Regulations relates to error resolution procedures."). A "notice of error" is "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred," or qualified written request (QWR)[12] that asserts an error relating to the servicing of the loan. *Id.* § 1024.35(a). A servicer in

---

> (3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).
>
> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
>
> (5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
>
> (6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).
>
> (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
>
> (8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.
>
> (9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
>
> (10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).
>
> (11) Any other error relating to the servicing of a borrower's mortgage loan.

12 C.F.R. § 1024.35(b).

[12]A QWR is defined as:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

11

receipt of a proper notice of error must generally respond by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i). "A servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to a notice of error." *Id.* § 1024.35(h). If the servicer provides borrower written notice of the address for notice of error submissions, the borrower must submit the notice of error to that address before the servicer can be found liable for violating RESPA's error resolution procedures. *Id.* § 1024.35(c).

To meet their summary judgment burden, Defendants point to the monthly mortgage statements sent to Plaintiff that identifies the mailing address "for all Error Notices & Information Requests." (*See generally* doc. 15 at 86-225.) They also provide a letter dated May 7, 2015, that Servicer sent Plaintiff responding to his April 7, 2015 inquiry regarding errors with the 2013 property taxes and escrow account. (*Id.* at 245-46.) The summary judgment evidence shows that Servicer provided Plaintiff written notice of the address for notice of error submissions, and that it had provided a written response to Plaintiff's April 7, 2015 inquiry. Defendants have therefore met their summary judgment burden with respect to Plaintiff's claim for violation of § 1024.35.

The burden now shifts to Plaintiff to show a genuine issue of material fact in support of his

---

12 U.S.C § 2605(e)(1)(B).

claim. Plaintiff does not dispute that he received written notice of Servicer's address for notice of error submissions, nor does he provide evidence of a notice of error that he sent to that address. Instead, he argues that because Servicer had initially notified him about the error with the 2013 property taxes and the escrow account, it "was on actual notice of the error and a QWR on this issue would have arguably served no additional practical purpose at the time." (doc. 27 at 12.) He provides emails and other correspondence as evidence of Servicer's actual knowledge of the 2013 property tax delinquency and escrow accounting errors. (*See* doc. 26-2 at 6-14). As discussed, RESPA's error reporting procedures are only applicable when the borrower sends a notice of error to the servicer in the form and manner provided under § 1024.35. *See* 12 C.F.R. § 1024.35(a). A servicer is under no obligation to respond to a notice of error that does not comply with the requirements of § 1024.35(a). *See, e.g., Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 768 (N.D. Tex. 2012) (dismissing RESPA claim where borrower did not allege "that the correspondence included information that enabled Defendant to identify the name and account of the borrower" or "a statement of reasons for the belief that the account was in error."); *Payne v. Seterus Inc.*, No. CV 16-0203, 2016 WL 6270761, at *6 (W.D. La. Oct. 26, 2016) ("Without identifying a notice of error that Payne sent to Seterus, there simply cannot be a basis for liability under 12 C.F.R. § 1024.35."). Plaintiff has not met his summary judgment burden to identify a genuine issue of material fact as to whether a notice of error had been sent to Servicer. *See Thicklin v. Caliber Home Loans, Inc.*, No. 4:18-CV-00709-O-BP, 2019 WL 3536831, at *9 (N.D. Tex. July 16, 2019), *adopted by* 2019 WL 3530637 (N.D. Tex. Aug. 2, 2019) (granting defendant's summary judgment motion on plaintiff's § 1024.35 claim because there was no evidence raising a fact issue of whether borrower had sent a valid notice of error to mortgage servicer at the address designated

for such requests).

Even if Servicer's actual notice of an error required a response under § 1024.35, Defendants provide a letter dated May 7, 2015, that Servicer sent Plaintiff, which was in response to his April 7, 2015 inquiry regarding the errors with the 2013 property taxes and escrow account. (*See* doc. 15 at 245-46.) It acknowledges the errors, states that the tax delinquency had been paid on May 5, 2014, and that penalties and interest from that error had been waived, explains that the escrow account had been re-analyzed resulting in a new monthly escrow payment effective July 1, 2014, states that Servicer will re-analyze the escrow account and provide a reduced monthly payment within thirty days, and provides the mailing address, email, fax number, and telephone phone to request additional documentation and further assistance. (*Id.*) The summary judgment evidence shows that Servicer provided Plaintiff a response that complied with the requirements of 12 C.F.R. § 1024.35(e)(1)(i). Defendants have met their summary judgment burden on this claim.

As noted, Plaintiff has not offered any evidence to dispute this showing, but instead reiterates his argument that this response failed to correct the error because it did not "resolve the missed payments made during the pendency of the loan modifications when they promised he did not have to make payments." (doc. 27 at 18.) Section 1024.35 requires a servicer to investigate a notice of error and either correct the error or explain in writing why no error occurred; "[it] does not require the servicer to provide the resolution or explanation desired by the borrower." *Finster v. U.S. Bank Nat'l Ass'n*, 245 F. Supp. 3d 1304, 1317 (M.D. Fla. 2017), *aff'd by* 723 F. App'x 877 (11th Cir. 2018) (citations omitted); *see* 12 C.F.R. § 1024.35. Plaintiff has failed to meet his burden to show a genuine issue of material fact as to his claim for violation of § 1024.35, and Defendants' motion

14

for summary judgment as to this claim should be granted.[13]

C.  **Promissory Estoppel**

Defendants move for summary judgment on Plaintiff's promissory estoppel claim on the ground that it is barred by the statute of frauds. (doc. 16 at 19-20.)

Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *See Hurd*, 880 F. Supp. 2d at 761; *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex.App.-El Paso 2004, no pet.). A claim for promissory estoppel must establish the following: (1) a promise; (2) reliance thereon that was foreseeable to promissor; and (3) substantial reliance by promisee to her detriment. *See McDonald v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-2691-B, 2012 WL 2122168, at *5 (N.D. Tex. June 11, 2012). "Under Texas law, promissory estoppel requires that 'the agreement that is the subject of the promise must comply with the statute of frauds. That is, the agreement must be in writing at the time of the oral promise to sign it.' " *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.–Dallas 2002, pet. denied)). An agreement involving a loan exceeding $50,000 in value is subject to the statute of frauds and must be in writing to be valid. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Bus. & Com. Code § 26.02(b)) ("An agreement regarding the transfer of the property or modification of a loan must . . . be in writing to be valid.").

Here, Defendants provide the Note, the Deed of Trust, and the loan modification agreements

---

[13]Defendants also move for summary judgment on this claim on grounds that there is no private right of action under § 1024.35, and even if there was, Plaintiff has not produced any evidence of actual damages. (doc. 16 at 16-19.) Because the claim is otherwise subject to dismissal, it is unnecessary to reach these arguments.

as summary judgment evidence. (*See* doc. 15 at 10-11, 248-61, 267-84.) Their evidence shows that the principal balance of Plaintiff's loan exceeded $50,000. Defendants have met their summary judgment burden establishing that the statute of frauds applies to any promise or agreement relating to Plaintiff's loan. *See Martins*, 722 F.3d at 256.

The burden now shifts to Plaintiff to show a genuine issue of material fact regarding whether a written agreement promising a loan modification had been entered by the parties. He does not dispute that his loan exceeded $50,000, and he does not provide evidence of a written agreement promising a loan modification. He instead claims that the asset managers for Servicer promised him a loan modification to resolve its "accounting mistake," and that he was not to "make mortgage payments during periods between modification results and while their investigation continued." (doc. 26-1 at 4, 7-8.) He argues that "[t]here is a fact issue as to whether [Servicer] breached its promise to provide a repayment agreement in such a way as to remedy [its] error to correct the problem for it failing to pay the 2013 property taxes on time." (doc. 27 at 22.) He points to solicitations received from Servicer between February 2013 and September 2016, requesting that he apply for loan modifications. (*See* doc. 26-1 at 34-48.) He argues that the summary judgment evidence shows that "[Servicer] led him to believe that a repayment or modification agreement was forthcoming, especially in light of how long the process went on and how many solicitation offers were made." (doc. 27 at 23.)

The evidence Plaintiff references fail to show a writing by Defendants promising him a loan modification. *See Martins*, 722 F.3d at 256*; see, e.g., Germain*, 2018 WL 1517860, at *8 (granting summary judgment on promissory estoppel claim because plaintiff failed to show that there was a written agreement based on defendant's alleged agreement of a loan forbearance plan); *see also*

16

*Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (affirming summary judgment of an estoppel claim when no evidence existed to establish an oral agreement to reduce an otherwise unenforceable promise to writing in satisfaction of the statute of frauds). Plaintiff has failed to meet his burden to show a genuine issue of material fact as to his promissory estoppel claim, and Defendants' motion for summary judgment as to this claim should be granted.[14]

### D.   TILA - 12 C.F.R. § 1026.41

Defendants move for summary judgment on Plaintiff's TILA claim arguing the summary judgment evidence shows that monthly invoices had been sent to Plaintiff during the disputed period. (doc. 16 at 22-23.)

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Schieroni v. Deutsche Bank Nat. Trust Co.*, No. H-10-663, 2011 WL 3652194 at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted); *see also* 15 U.S.C. § 1601. Under Regulation Z of TILA, a mortgage loan servicer must send the borrower periodic statements for each billing cycle. *See* 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a). The statements must include, in part, the amount due, a breakdown of total fees or charges imposed, recent transaction activities, relevant contact information, and certain information regarding the account, partial payments, and any delinquencies. *See* 12 C.F.R. § 1026.41(c)-(d); 15 U.S.C. § 1638(f) (identifying items to include in the periodic statements for residential mortgage loans as the outstanding loan balance, the interest rate, any prepayment fee to be charged, a description of any late payment fees, and the telephone number and email address to obtain information regarding the

---

[14] Defendants also move for summary judgment on the promissory estoppel claim, arguing that it is barred by the economic loss rule, and that Plaintiff did not justifiably rely on their alleged promises. (doc. 16 at 20-22.) Because the claim is otherwise subject to dismissal, it is unnecessary to reach these arguments.

loan).

Here, Defendants provide copies of the monthly mortgage statements sent to Plaintiff between January 1, 2015 and July 1, 2018, as summary judgment evidence to meet their burden. This evidence shows that each statement included the information required for periodic monthly statements under Regulation Z. *See* 12 C.F.R. § 1026.41(c)-(d); 5 U.S.C. § 1638(f). Defendants have met their summary judgment burden.

The burden now shifts to Plaintiff to show that there is a genuine material fact issue with respect to this claim. He does not dispute the summary judgment evidence showing that Defendants provided monthly payment statements with the requisite loan information for the disputed period, and by failing to respond to this argument, he has abandoned this claim. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2514998, at *7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.") (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Plaintiff has failed to meet his burden to show a genuine issue of material fact as to his TILA claim, and Defendants' motion for summary judgment as to this claim should be granted.[15]

### E. Injunctive Relief

Defendants move for summary judgment on Plaintiff's request for injunctive relief on the ground that he has failed to bring any viable claims against them. (doc. 26 at 29.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No.

---

[15] Defendants also move for summary judgment on the TILA claim on the ground that Plaintiff has no evidence of actual damages. (doc. 16 at 22-23.) Because the claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Plaintiff seeks to prevent or restrain Defendants from foreclosing on the Property. (doc. 1-4 at 13-14.) Because summary dismissal of all Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. Accordingly, Defendants are entitled to summary judgment on Plaintiff's request for injunctive relief.

### F.  Attorney's Fees

Defendants move for summary judgment on Plaintiff's request for attorney's fees on the ground that he has failed to plead a viable cause of action. (doc. 16 at 28.) Because Plaintiff has failed to raise a genuine issue of material fact with respect to any of his substantive claims, Defendants are entitled to summary judgment on his request for attorney's fees and court costs. *See Franklin v. BAC Home Loans Servicing, LP*, No. 3:10-CV-1174-M, 2012 WL 2679496, at *12 (N.D. Tex. June 6, 2012), *adopted by* 2012 WL 2688809 (N.D. Tex. July 5, 2012) (dismissing plaintiff's request for attorney's fees because all of his substantive claims had been dismissed on summary judgment).

### IV.  RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED with prejudice.**[16]

---

[16] Defendants also move for summary judgment on all Plaintiff's claims on the basis that they are time-barred and fail as a matter of law. (doc. 16 at 24-26.) Because his claims are otherwise subject to dismissal, it is unnecessary to reach these arguments.

**SO RECOMMENDED** on this 12th day of February 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE